OPINION
{¶ 1} Defendant-appellant, Franklin Starkey ("Starkey") appeals the judgment of the Auglaize County Court of Common Pleas. We affirm the judgment of the trial court for the reasons which follow.
 {¶ 2} In 1989, Starkey was convicted of attempted rape, an aggravated felony in the second degree. The trial court sentenced Starkey to no less than seven years and not more than fifteen years as a term of actual incarceration. On May 6, 1999, Starkey was classified as a sexual predator.
 {¶ 3} After his release from prison, Starkey registered his residence at 18988 Wrestle Creek Road, Wapakoneta, Ohio, which was the residence of his parents, Donald and Wanetta Dotson ("Mr. Dotson" and "Mrs. Dotson" respectively). The property was located in a rural area and included a twenty-two acre tract of land with a house, a barn, and several outbuildings.
 {¶ 4} In March 2005, the Auglaize County Sheriff discovered that Starkey was periodically staying the night at his former wife's house in Lima, Ohio. The sheriff department warned Starkey that he could not stay at his former wife's house because the Wrestle Creek Address was his registered residence.
 {¶ 5} On May 11, 2005, Starkey again registered his address with the Auglaize County Sherriff's office listing the Wrestle Creek address. Thereafter, Douglas Burke ("Burke"), of the Auglaize County Sheriff's office, stopped by the Wrestle Creek address to verify that Starkey was living where he had registered. Burke spoke to Mrs. Dotson who informed him that Starkey was no longer living at the residence due to a disagreement between herself and Starkey.
 {¶ 6} On July 14, 2005, the grand jury indicted Starkey for failing to register a change of address, a violation of R.C. 2950.05(E)(1)/R.C.2950.99(A)(1)(a)(i) and a third degree felony.[1]
 {¶ 7} A police officer saw Starkey on the front porch of his daughter's house, in Lima, Ohio, on July 21, 2005, and arrested Starkey. Starkey was later transported to the Auglaize County Correctional Center where he was interviewed. During the interview, Starkey verified that he had had an argument with his mother. Starkey maintained, however, that he never actually changed his residence because he had stayed in a tent set up in a wooded area on the Wrestle Creek Road property. Starkey further told the sheriff that due to his disagreement with his mother he had kept a "low profile" on the property and did not inform his parents that he was staying in a tent on their property.
 {¶ 8} As a result of the interview, Thomas Keckler ("Keckler"), a sergeant at the Auglaize County Sheriff's Office, visited the property on July 22, in order to locate the tent. Keckler searched the Wrestle Creek property but did not find a tent on the property at that time.
 {¶ 9} While in police custody, Starkey became ill and he was taken to the hospital due to a heart condition. Starkey stayed at the hospital for a few weeks. After Starkey was released from the hospital, the trial court granted him permission to convalesce at his parents' house on Wrestle Creek Road.
 {¶ 10} The jury trial began on October 5, 2005. During the trial, Melissa Armentrout ("Mrs. Armentrout"), Starkey's daughter, told defense counsel that she had gone out to the Wrestle Creek Road property a few days earlier and had found and videotaped the abandoned campsite that Starkey had set up. The defense counsel disclosed the existence of the video tape to the prosecutor. The prosecutor examined the video tape and then had Jerry Sawmiller ("Sawmiller"), an Auglaize County Sheriff detective, visit the Wrestle Creek Road property. Sawmiller went to the property and found an abandoned campsite at that time.
 {¶ 11} The prosecution continued to present its case against Starkey. At the close of the prosecution's case in chief, Starkey filed a motion for acquittal pursuant to Crim.R. 29. The trial court denied the motion. Starkey renewed his motion for acquittal at the close of all the testimony. The trial court again denied the motion
 {¶ 12} Thereafter, the jury returned a verdict of guilty. The trial court then sentenced the defendant to four years imprisonment.
 {¶ 13} It is from the trial court's denial of the motion for acquittal that Starkey appeals and sets forth one assignment of error for our review. ASSIGNMENT OF ERROR NO. I THE TRIAL COURT'S OVERRULING OF DEFENDANT-APPELLANT'S MOTION FOR ACQUITTAL AT TRIAL AND THE SUBSEQUENT JURY VERDICT OF GUILTY AT TRIAL CONSTITUTED SUBSTANTIAL PREJUDICIAL ERROR IN AS MUCH AS THERE WAS INSUFFICIENT EVIDENCE TO SUPPORT THE DEFENDANT-APPELLANT'S TO REGISTER HIS CHANGE OF ADDRESS PURSUANT TO OHIO REVISED CODE SECTION 2950.05. CONVICTION FOR FAILING
 {¶ 14} In his sole assignment of error, Starkey argues that the evidence was insufficient for the jury to be able to find beyond a reasonable doubt that he changed his residence, thus, the trial court should have granted his motion for acquittal. Starkey asserts that he resided on the property in a tent, therefore, he had not changed his address. Starkey further argues, "if an individual is to change his address, it is important to ascertain whether the individual has established his residence elsewhere. This was not done in the case presented by the state."
 {¶ 15} In State v. Bridgeman (1978), 55 Ohio St.2d 261, 9 O.O.3d 401,381 N.E.2d 184, syllabus, the Ohio Supreme Court held that "[p]ursuant to Crim. R. 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt." The Bridgeman standard, however, "must be viewed in light of the sufficiency of evidence test * * * ."State v. Foster (Sept. 17, 1997), 3d Dist. No. 13-97-09, *2.
 {¶ 16} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." State v. Jenks (1991), 61 Ohio St.3d 259,574 N.E.2d 492, paragraph two of the syllabus, superseded by state constitutional amendment on other grounds in State v. Smith (1997),80 Ohio St.3d 89, 684 N.E.2d 668. When reviewing the sufficiency of the evidence to support a criminal conviction, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Id.
 {¶ 17} In the case sub judice, Starkey was convicted of failing to register a change of address in violation of R.C. 2950.05(E)(1).
 {¶ 18} R.C. 2950.05(E)(1) provides: "No person who is required to notify a sheriff of a change of address pursuant to division (A) of this section shall fail to notify the appropriate sheriff in accordance with that division." Pursuant to R.C. 2950.05(A): "If an offender * * * is required to register pursuant to section 2950.04 or 2950.041 of the Revised Code, the offender * * * at least twenty days prior to changing the offender's * * * residence address * * * during the period during which the offender * * * is required to register, shall provide written notice of the residence * * * to the sheriff with whom the offender* * * most recently registered the address * * *."
 {¶ 19} The prosecution presented the testimony of Greg Link ("Link"), a sergeant at the Auglaize County Sheriff's Office, who handles sexual offender registration. Link testified that he registered Starkey and that Starkey was required to register his address once every ninety days. According to Link, Starkey registered on August 17, 2004; November 11, 2004; February 13, 2005; May 11, 2005; and August 12, 2005. Link further testified that Starkey had listed his address as 18988 Wrestle Creek Road on the registrations.
 {¶ 20} The prosecution presented a copy of the journal entry in which Starkey was convicted of attempted rape and a copy of the journal entry determining Starkey to be a sexual predator. Further, the prosecution presented a copy of Starkey's registration from May 11, 2005, in which Starkey listed his address as 18988 Wrestle Creek Road.
 {¶ 21} Mr. Dotson, Starkey's father, testified that the Wrestle Creek property consisted of twenty-two acres, of which maybe seven or eight of the acres are wooded. According to Mr. Dotson, he told the deputy that he did not think that there was a tent located at the back of the property. Mr. Dotson testified that he went with Keckler to the dump area, but that he had decided to wait on Keckler because his back was hurting. Mr. Dotson testified that he saw Keckler walk over by the cement blocks but did not see him go anywhere else. Mr. Dotson further testified that Keckler was out at the property for fifteen minutes. During his testimony, Mr. Dotson acknowledged that he had parkinson's disease and that he had a "little bit" of trouble remembering things.
 {¶ 22} Mrs. Dotson testified that Starkey was not living at her house on June 28, 2005, and that he had stopped living there a couple of weeks prior to that date. Mrs. Dotson further testified that she was not aware of where Starkey was living after he left her residence. According to Mrs. Dotson, Starkey came out to the property during the daytime but not during the nights. However, Mrs. Dotson also testified that there could have been times that Starkey was at the residence of which she was not aware.
 {¶ 23} At trial, Keckler testified that Deputy Burke asked him to go out to the Wrestle Creek Road property and check the wooded area for a tent. On July 22, Keckler did, in fact, go to the property and look around. Keckler testified to the following regarding his search of the property:
 Q And what did you find when you went back there?
 A Basically there was a clearing back in part of their woods and stuff that he used as a dump pile and a burn pile and stuff like that, and according to what Mr. Dotson had showed me and described to me, checked the area or the wooded area on the property where Mr. Starkey was supposed to have the tent.
 Q What lead you to that burn pile area?
 A Just kind of the clearing leading from the house I mean it would be the common path. You could fit a car up through there. And I believe at one time they would bring pickup truck loads of things to bring here because there were some scrap items where, you know, they would maybe burn the plastic off and keep the metal or whatever. That was just kind of the general area to get that or the general path.
 Q On the property to check for the tent, why did you concentrate on that area?
 A That seemed to be the area that Mr. Dotson seemed to think that it would be because it would make sense if he was living in Lima you could drive a car right to this area and then, you know, have your tent or whatever dwelling you were living in at the time.
 Q Did you find any evidence of a tent or anybody residing in that area?
 A No nothing at all.
 {¶ 24} On rebuttal, the prosecution showed Keckler the video tape of the tent. Keckler stated, "Because I walked that entire area and as I testified this morning, low foliage, high trees, and I walked all through that area and I can guarantee you one hundred percent (100%) there was not a tent there when I walked through there."
 {¶ 25} Jerry Sawmiller, from the Auglaize County Sheriff's department, testified that Starkey went on a furlough from the Auglaize County Correction Center due to a heart condition. After Starkey was released from the hospital, Starkey went to stay at the Wrestle Creek Road address. Sawmiller testified that he went to the Wrestle Creek Road property to re-register Starkey. Sawmiller testified that Starkey did not offer any information about the tent while he was at the property to re-register Starkey.
 {¶ 26} Sawmiller also testified that he had interviewed Mrs. Armentrout and her husband, Rusty Armentrout, on September 28, 2005. During the interview, Sawmiller asked Mr. and Mrs. Armentrout about the tent. According to Sawmiller, Mr. and Mrs. Armentrout informed him that Starkey "had borrowed a tent from them, but neither of them had ever seen the tent set up on the property".
 {¶ 27} At the time of trial, Sawmiller was dispatched to the residence to look for the tent portrayed in Mrs. Armentrout's video. Sawmiller located a tent on the property which he described as being a one or two person tent that was blueish grey in color. According to Sawmiller, there were cobwebs on the outside of the tent and standing water in one of the corners on the inside of the tent. Sawmiller testified that there was a small grill or camp stove near the tent.
 {¶ 28} Sawmiller also testified to the following:
 Q In State's Exhibit 7 when you're at the cinder blocks depicted on the right, can you see the tent depicted on the left?
 A That's correct. From this distance back here you can barely see the cinder blocks. And as you pan across you can see the top edge of that tent. As you walk back to where the cinder blocks are closer, the tent is just over the hill. It's obvious if you're standing by those cinder blocks panning around you cannot miss that tent.
 Q Can you say whether or not that tent was erected in August or June of 2005?
 A No, I couldn't say for certain when it was erected.
 Q Is it possible that it wasn't erected until August of 2005?
 A Oh, I would say that is possible. The cobwebs and stuff on it could have gathered in a matter of probably a few weeks.
Emphasis added. Sawmiller also testified that he could not rule out that the tent was there in either June or July.
 {¶ 29} Mrs. Armentrout, Starkey's daughter, testified that she would go out to the property in the morning and pick up her father at the barn around 7:00 or 7:30 in the morning. According to Mrs. Armentrout, she would drop Starkey off by the barn on the property between 11:00 and 12:00 at night. Mrs. Armentrout also testified that she went to the property on Monday of the week of trial to look for the tent, she found the tent on the property, and she videotaped the tent. Mrs. Armentrout stated that she had last seen the tent during the July 4 weekend when she used the tent to camp.
 {¶ 30} The defense presented the testimony of Starkey. Starkey testified that he was previously convicted of attempted rape, that he was incarcerated as a result of his conviction, that he was classified a sexual predator, that he was required to register, and that he was required to renew his address every ninety days. Following his release from prison on August 9, 2004, Starkey resided at 18988 Wrestle Creek Road. According to Starkey, he and his mother had a disagreement, therefore, he got a blue and grayish one man tent from his son-in law in July and he set up the tent back by his father's dump. Starkey testified that he continued to reside at the Wrestle Creek Road address; that he lived in the tent at the property; and that when he was interviewed after being arrested he told the officer that he was staying in a tent. After being arrested, Starkey testified that he had a heart attack, was taken to the hospital, underwent a FemPop and open heart surgery, and that he was on physical restrictions like not being able to lift over five pounds, and barely being able to walk. On cross-examination, Starkey admitted that he did not get the tent until after July 4; that he was not living in the tent in June 2005; and that he had resided in a barn on the property in June.
 {¶ 31} In the case sub judice, Starkey was charged with failing to register a change of address in violation of R.C. 2950.05(E)(1). R.C.2950.05(E)(1) provides: "No person who is required to notify a sheriff of a change of address pursuant to division (A) of this section shall fail to notify the appropriate sheriff in accordance with that division." Pursuant to R.C. 2950.05(A): "If an offender * * * is required to register pursuant to section 2950.04 or 2950.041 of the Revised Code, the offender * * * at least twenty days prior to changing the offender's * * * residence address * * * during the period during which the offender * * * is required to register, shall provide written notice of the residence * * * to the sheriff with whom the offender* * * most recently registered the address * * *."
 {¶ 32} The prosecution presented the journal entry of Starkey's conviction for attempted rape, and the journal entry wherein the trial court adjudicated Starkey to be a sexual predator. The prosecution also presented the testimony of Greg Link who testified that he registered Starkey, that Starkey was required to register his address once every ninety days, and that Starkey had listed his address as 18988 Wrestle Creek Road for the registrations. Mrs. Dotson, Starkey's mother, testified that Starkey was no longer living at 18988 Wrestle Creek Road as of June 28, 2005, and that he had stopped living there a couple of weeks earlier.
 {¶ 33} The fact that a tent was found on the property at the time of trial in October does not mean that the tent was on the property during June 8 through July 13, the relevant time period. The prosecution presented the testimony of Jerry Sawmiller who visited the property at the time of the trial and found a tent on the property. Although Sawmiller was unable to tell when the tent was erected on the property, he testified that the location of the tent was "obvious if you're standing by those cinder blocks panning around you cannot miss that tent." Further, Thomas Keckler testified that when he went out into the property in July, he looked around the property by the dump area, but he did not see a tent. The fact that Keckler did not cross every inch of the 22 acre property, and the fact that the absence of foliage in the fall would have made the tent easier to spot in the summer, does not establish that Keckler's search was ineffective. Keckler testified that he looked around the dump area. Keckler further testified, after viewing the video tape of the tent, that he was certain the tent was not there in July.
 {¶ 34} Although Starkey and Keckler's testimonies regarding the existence of the tent on the property in July differ, it does not render the evidence insufficient. The credibility of a witness is a matter primarily for the jury. See State v. DeHass (1967), 10 Ohio St.2d 230,39 O.O.2d 366, 227 N.E.2d 212, paragraph one of the syllabus.
 {¶ 35} Moreover, the prosecution is not required to prove where Starkey was, in fact, living. The state needed only to prove that Starkey was not living at the address he provided in his registration. The statute provides that "no person who is required to notify a sheriff of a change of address * * * shall fail to notify the appropriate sheriff." When an individual is no longer living at their registered address, then they have changed their address. See State v. Beasley
(Sept. 27, 2001), 8th Dist. No. 77761, at * 2.
 {¶ 36} When viewing the evidence in this case presented at trial in a light most favorable to the prosecution, we hold that there was sufficient evidence for the jury to find Starkey guilty of failing to register a change of address under R.C. 2950.05(E)(1) beyond a reasonable doubt. Starkey's sole assignment of error is, therefore, overruled.
 {¶ 37} Having found no error prejudicial to appellant herein, in the particulars assigned and argued, we affirm the judgment of the trial court.
Judgment Affirmed.
[1] R.C. 2950.99 lists the penalties for a violation of R.C.2950.05.